**IN THE UNITED STATES DISTRICT BCOURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Martinsburg**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**Civil Action No. 3:16-CV-24**
Judge Bailey

**DAVID M. WASANYI,**

Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

This is a civil action brought by the United States of America seeking civil penalties

for violations of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. §

801, et seq., from defendant David M. Wasanyi.[1]

The Controlled Substances Act provides for a civil penalty of up to $25,000 per

violation of its provisions. 21 U.S.C. § 842(c)(1). In determining the amount of civil

penalties to be imposed under 21 U.S.C. § 842, courts have considered the following four

factors: (1) the willfulness of the violations; (2) the defendant's profits from the violations;

(3) the harm to the public; and (4) the financial capacity of the defendant to pay a penalty.

*United States v. Barbacoff*, 416 F.Supp. 606, 610 (D.D.C. 1976); *United States v.*

*Williams*, 416 F.Supp. 611, 614 (D.D.C. 1976). In accordance with the Court's conclusion

that 1,181 illegitimate prescriptions were filled, [Doc. 116 at 10], defendant is exposed to

a maximum penalty of $29,525,000.

---

[1] The other defendants, Roger Lewis, Amy Louise, City Pharmacy and City
Pharmacy Charles Town have previously resolved the Government's claims in a consent
decree. See Docs. 115, 121 and 122.

By Order entered April 19, 2017, this Court granted the Government's Motion for Summary Judgment finding defendant Wasanyi liable for violating 21 U.S.C. § 842(a)(1) [Doc. 116].

A bench hearing was held on December 12, 2018, to determine the amount of the penalty, if any, to be imposed. The Government presented the testimony of Lindsey Malocu, a diversion investigator with the Drug Enforcement Administration, and Dennis Johnson, a civil investigator contracted to the U.S. Attorney's Office. The Government also introduced a number of documents. The defendant, David Wasanyi, offered comments and introduced a number of exhibits.

Having heard the testimony of the witnesses and having considered the exhibits presented by both parties, this Court rules as follows:

1.     On February 29, 2016, the Government filed a complaint against the above-named defendant, alleging violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801-971 ("the CSA"), and seeking civil penalties for the same.

2.     Specifically, the United States alleges violations of 21 U.S.C. § 842(a)(1), 21 U.S.C. § 829, 21 C.F.R. § 1306.04, 21 C.F.R. § 1306.05 and 21 C.F.R. § 1306.11 [Id.]. The Government claims that the individual defendants utilized City Pharmacy, LLC ("CP"), and City Pharmacy of Charles Town, Inc. ("CPCT"), to fill illegitimate prescriptions for controlled substances, including those which were: (1) written by medical providers located in distant states; (2) presented by individuals who traveled from distant locations; (3) paid for using cash; (4) altered by scratching out the medical provider's fill date, increasing the number of units being prescribed or changing the strength, nature or type of controlled substance;

and (5) lacking the full name or address of the patient for whom the prescription was written.

3.    During the time of the events alleged in the Complaint, David Wasanyi was a pharmacist, licensed by the West Virginia Board of Pharmacy, and was the primary pharmacist at both City Pharmacy and City Pharmacy Charles Town.

4.    From 2010 into 2015, City Pharmacy and City Pharmacy Charles Town filled 1,181 invalid prescriptions for Schedule II and Schedule III controlled substances, written by 45 physicians located in Florida, Georgia, Tennessee and Virginia for patients in Alabama, Florida, Georgia, Kentucky, Maryland, Ohio, Tennessee and Virginia.

5.    Most of the prescriptions (957) were written for allegedly fraudulent patients who were residents of Kentucky and Ohio.

6.    Additionally, all of the purportedly fraudulent patients traveled great distances to have the prescriptions filled.

7.    The individual defendants utilized CP and CPCT, to fill illegitimate prescriptions for controlled substances, including those which were: (1) written by medical providers located in distant states; (2) presented by individuals who traveled from distant locations; (3) paid for using cash; (4) altered by scratching out the medical provider's fill date, increasing the number of units being prescribed or changing the strength, nature or type of controlled substance; and (5) lacking the full name or address of the patient for whom the prescription was written.

8.    The Government presented copies of four of the prescriptions at issue and a spreadsheet summarizing the prescriptions, which, in turn, purportedly demonstrate that the vast majority of the prescriptions were written by a provider who was not located in the

same state as the patient [Gov't Exs. 1 and 3].

9.    In his capacity as a pharmacist, Wasanyi filled the majority of the aforementioned 1,181 illegitimate prescriptions until his arrest in April of 2014. At that time, Wasanyi was arrested and indicted by the State of West Virginia for improper delivery of controlled substances, and ultimately he faced charges in two separate Berkeley County cases and one Jefferson County case.

10.    In April of 2016, Wasanyi was convicted in the Circuit Court of Berkeley County (Case No. 15-F-17) of two counts of improper delivery of diazepam and one count of improper delivery of buprenorphine.

11.    Then, in October of 2016, Wasanyi was convicted in the Circuit Court of Berkeley County (Case No. 16-F-54) on 13 counts of improper delivery of a controlled substance. The charges in Case No. 16-F-54 involved 13 prescriptions presented by two women from Kentucky and written by a Georgia provider and are, in turn, allegedly similar to the 1,181 prescriptions at issue in this Federal civil action.

12.    Finally, in February of 2016, Wasanyi was indicted in Jefferson County Circuit Court (Case No. 16-F-123) for his alleged role in a conspiracy to obtain controlled substances by fraud. No evidence has been presented as to the outcome of this case.

13.    This action followed those related state-court matters.

14.    By Order entered April 19, 2017, this Court granted on part and denied in part the Government's Motion for Summary Judgment [Doc. 116].

15.    With respect to the first factor, this Court finds that the violations in question were willful and designed to increase the profitability of the defendant's pharmacy business.

16. The second factor relates to the defendant's profits from the violations.

17. In that regard, the Government presented an exhibit showing the profits that would be made if the drugs were sold on the street [Gov't Ex. 2].

18. The fault with this evidence is that there is no evidence that the defendant sold the drugs on the street thereby garnering the profits indicated on the exhibit. In addition, there is no way of knowing how many, if any, of the pills were sold on the street as opposed to being consumed by the purchasers themselves.

19. In an effort to arrive at some semblance of a fair number and being of the opinion that the penalty is not required to be established with mathematical certainty, this Court will extrapolate the amount under this factor.

20. All four of the prescriptions presented involved oxycodone. There were two prescriptions for oxycodone 20 mg., which were sold for $3.00 per tablet. One prescription for oxycodone 15 mg., were sold for $2.50 per tablet. The final prescription, for oxycodone 30 mg., were sold for $.50 per tablet [Gov't Ex. 3].

21. According to the street value exhibit presented by the Government [Gov't Ex. 2], the street value of an oxycodone 15 mg. is $15. The street value of a 20 mg. is $20, and the value of a 30 mg. is $30.

22. Accordingly, the 15 mg. tablets sold for 16.6 % of the street value; the 20 mg. tablets sold for 15 % of street value; and the 30 mg. tablets sold for 11.6 % of the street value.

23. Inasmuch as the vast majority of the oxycodone sold were the 30 mg. tablets, this Court will estimate that the defendant received 12.5 % of the street values listed on Exhibit 2, or $ 335,670.

24.     The third factor to be considered is the harm to the public from the violations. There is little doubt that the opiod crisis in West Virginia is tragic and widespread. There is also little evidence that these drugs were used or sold in West Virginia, since the purchasers appear to have come from outside West Virginia.

25.     The final factor to be considered is the financial ability of the defendant to pay the penalty. Some Courts have determined that the burden is on the defendant to demonstrate an inability to pay. *United States v. Ahuja*, 736 Fed.Appx. 20, 22 (2d Cir. 2018).

26.     In this case, the limited evidence indicates little ability to pay. The defendant's home has been repossessed; he no longer owns either of his low value automobiles; he is in prison; and he will lose (if the has not lost already) his license to practice pharmacy.

27.     Based upon a balancing of all these factors, this Court will impose a penalty equal to the estimated income from the tablets that were sold; that is $ 335,670.

Accordingly, the Clerk is directed to enter a judgment against the defendant in the amount of $ 335,670 plus post judgment interest beginning on the date of judgment, and to terminate this civil action.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a certified copy to the *pro se* defendant.

**DATED:** December 21, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE